1 Broker (Company) **Campbell Commercial Real Estate, Inc.**   Licensee(s) (Name) **Arthur D. Campbell**
2                                                                **Lawrence L. Kostelac III**
3 Company Address **525 N. 12 Street, Suite 203, Lemoyne,** Direct Phone(s) _____
4 **PA 17043**                                                  Cell Phone(s) **(717) 421-7705**
5 Company Phone **(717) 737-6161**                               Fax _____
6 Company Fax **(717) 737-9640**                                 Email **art@acampbell.net /larry@acampbell.net**
7 Owner **Lawrence Young, Trustee for , Michael & Linda Stock**
8 _____
9 _____
10 _____
11 Company/Entity (if applicable) _____
12 Representative/Authorized Signer **Lawrence Young**                     Title **Attorney**
13 Owner's mailing address _____
14 _____
15 Phone _____                                                  Cell Phone _____
16 E-mail _____                                                  Fax _____
17 Owner understands that this Listing Contract is between Broker and Owner.
18 Does Owner have a listing contract for this Property with another broker? ☐ Yes ☒ No
19 If yes, explain: _____

20 **1. PROPERTY**
21    (A) Address **419 Ross Avenue, New Cumberland, PA 17070**
22        Municipality **Fairview Township**                       County **York**
23        Tax Identification #(s) **3270000101200000000**
24 _____
25        Deed Book **0524**
26 _____                                                          Page **0399**
27        Zoning Classification & Present Use **Village Mixed Use**
28        **4 Unit Apartment building**
29        ☐ A legal description or a description of the Property is attached to this Contract.
30        Units in Property: **4**                                 Units Being Listed: **4**
31        Is the Property or any of its units currently leased? ☒ Yes ☐ No
32        If yes, explain: **4 apartments leased**
33    (B) **Inclusions:** Included with the Property are items listed here or ☐ listed in a property description sheet attached:
34 _____
35 _____
36 _____
37 _____
38        The Property is not being sold with a business unless otherwise stated here: _____
39 _____
40    (C) **Exclusions:** Excluded from the Property are items and leased equipment listed here or ☐ listed in the attached property descrip-
41        tion sheet: _____
42 _____
43 _____
44 _____

45 **2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
46    (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Owner have discussed
47        and agreed upon the term of this Contract.
48    (B) **Starting Date:** This Contract starts when signed and dated by Broker and Owner, unless otherwise stated here: _____
49 _____
50    (C) **Ending Date:** This Contract ends at 11:59 PM on **November 30, 2018** . By law, the term of a listing contract may
51        not exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is
52        automatically 364 days from the Starting Date of this Contract.
53 Broker/Licensee Initials: _____           XLSC Page 1 of 8                             Owner Initials: _____

Pennsylvania Association of Realtors®          COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2014
                                                                                              04/14
CAMPBELL CommercialReal Estate, 525 N. 12th Street Lemoyne PA 17043         Phone: (717)737-6161    Fax:           419 Ross Avenue
Arthur Campbell          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Case 1:16-bk-01373-HWV   Doc 117   Filed 02/28/18   Entered 02/28/18 13:41:32   Desc
                         Main Document    Page 1 of 8

3. **DUAL AGENCY**

Owner agrees that Broker and Broker's Licensees may also represent the buyer/tenant of the Property. A broker is a Dual Agent when a broker represents both a buyer/tenant and Owner in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer/tenant and Owner in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer/tenant and Owner. If the same Licensee is designated for a buyer/tenant and Owner, the Licensee is a DualAgent. Owner understands that Broker is a Dual Agent when a buyer/tenant who is represented by Broker is viewing properties listed by Broker.
[X] Dual Agency is not applicable.

4. **DESIGNATED AGENCY**

Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests of Owner. If Licensee is also the buyer/tenant's agent, then Licensee is a DUAL AGENT.
[ ] Designated Agency is not applicable.

5. **LISTED PRICE AND TERMS**

(A) Owner is hiring Broker to negotiate the following type of transaction regarding the disposition of the Property:
[X] A sale, for the following price and terms: **139,900.00**

or any other price and terms agreeable to Owner.
[ ] A lease, or other tenancy, for the following price and terms described here, or by [ ] an exhibit/addendum outlining lease terms that is attached as part of this Contract, or any other price and terms agreeable to Owner: 

(B) Reasonable marketing expenses will be paid by Broker as follows: **Signage, web-based, flyers and email marketing**

(C) Reasonable marketing expenses will be paid by Owner as follows: **None- Unless agreed in writing**

6. **BROKER'S DUTY**

(A) Broker is engaged as Owner's sole Owner Agent (Listing Agent) as described in the Consumer Notice to represent Owner, to market the Property, and to procure buyers and/or tenants for the Property. Broker will use reasonable diligence and care to procure buyers and/or tenants for the Property.
(B) Broker will not, unless otherwise agreed to in a separate, written agreement, provide management, repair, collection, legal, tax, or other services.

7. **OWNER'S DUTY**

(A) Owner will not enter into another listing contract for the Property(s) identified in Paragraph 1 with another broker that begins before the Ending Date, or any extensions, of this Contract.
(B) Owner will cooperate with Broker to facilitate the sale and/or lease of the Property.
(C) All showings, negotiations and discussions about the sale, lease, or other tenancy of the Property will be done by Broker on Owner's behalf. All written or oral inquires that Owner receives or learns of regarding the Property, regardless of the source, will be referred to Broker.
(D) Within __14__ days of the Starting Date of this Contract, Owner will provide to Broker:
 1. Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's ability to finalize a sale or lease of the Property, including any changes to these after the original delivery of this information.
 2. If available to Owner, copies of building plans, inspection reports, and environmental surveys. If the transaction is a sale, Owner will also deliver to Broker, within __14__ days of the Starting Date of this Contract, available title reports, boundary surveys, and existing notes and mortgages that may continue to affect the Property after settlement.

Broker/Licensee Initials: _____      XLSC Page 2 of 8      Owner Initials: _____
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   419 Ross Avenue

Case 1:16-bk-01373-HWV   Doc 117   Filed 02/28/18   Entered 02/28/18 13:41:32   Desc
Main Document   Page 2 of 8

110     (E) Owner will not permit any real estate signs, other than those belonging to Broker, to be placed on the Property during the term of
111        this Contract.
112     (F) Owner has full responsibility for maintenance, repair, replacement, operation, and security of the Property. Broker will not be
113        liable for any loss, damage, or injury to the Property or to Owner, any current tenants of the Property, any buyer, prospective
114        buyer, tenant, prospective tenant, or any other person, including those that may occur as a result of Broker's use of a lock box.
115        Owner will hold harmless Broker, Licensee, Broker's employees and agents, and will indemnify such persons and entities from
116        and against all claims, suits, and liability as may arise from property damage or injuries that occur on or about the Property,
117        including judgments, costs of defense, attorneys' fees, and settlement. Owner hereby releases and relieves Broker, and waives
118        Owner's entire right of recovery against Broker, for direct or consequential loss or damage arising out of or incident to the perils
119        covered by insurance carried by Owner, whether or not due to the negligence of Broker.

120 **8. BROKER'S FEE**
121     (A) The Broker's Fee has been determined as a result of negotiations between Broker and Owner and has not been established or rec-
122        ommended by any Association of Realtors®, or by any other organization or individual.
123     (B) Broker's Fee in the case of a sale is _____*_____ % of the gross purchase price of real property, AND $ _____,
124     AND _____ % of the gross purchase price of personal property, unless otherwise stated here: **\*7% if co-brokered with**
125     **another agency - 6% if Campbell only**
129     (C) Broker's Fee in the case of a lease is _____ % of all rent to be collected from tenant AND $ _____,
130     unless otherwise stated here: _____
134     (D) Broker's Fee for any options, renewals, extensions, expansions, or any other continued tenancy is _____ % of the rent to
135     be collected AND $ _____, unless otherwise stated here: _____

139 **9. COOPERATION WITH OTHER BROKERS**
140 Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Owner agree that Broker will
141 pay from Broker's Fee a fee to another broker who procures the buyer and who:
142     (A) ☐ **Represents Owner (SUBAGENT).** Broker will pay _____ of/from the sale price in the
143        event of a sale or _____ of/from the lease value in the event of a lease.
144     (B) ☒ **Represents the buyer or tenant (BUYER'S AGENT).** Broker will pay **3.5%** _____ of/from the
145        sale price in the event of a sale or _____ of/from the lease value in the event of a lease.
146        A buyer's Agent, even if compensated by Broker for Owner, will represent the interests of the buyer/tenant.
147     (C) ☐ **Does not represent either Owner or a buyer/tenant (TRANSACTION LICENSEE).** Broker will pay
148        _____ of/from the sale price in the event of a sale or _____ of/from
149        the lease value in the event of a lease.
150     (D) ☐ Broker will pay _____ of/from the renewal value for all lease renewals.

151 **10. PAYMENT OF BROKER'S FEE**
152     (A) **If Sale or Lease Occurs**
153       **1. Owner will pay Broker's Fee if the Property, or any ownership interest in it, is sold, leased, or exchanged at the listed**
154         **price or any price acceptable to Owner, during the term of this Contract, by Broker, Licensee, Owner, or by any other**
155         **person or broker.**
156       2. Owner will pay Broker's Fee if negotiations that are pending at the Ending Date of this Contract result in a sale, lease or other tenancy.
157       3. In the case of a sale, Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the
158         transaction involves an installment contract, then Broker's Fee will be paid upon the execution of the installment contract. In
159         the case of a lease, Broker's Fee will be paid upon execution of a lease by Owner and a tenant.
160       4. Owner will pay Broker's Fee in United States currency. If Owner fails to pay Broker any amount when due under this Contract,
161         then the amount owed will bear interest at the rate of 15 percent per year.
162       5. Owner will pay Broker's Fee after the Ending Date of this Contract IF:
163         a. The Property is sold, leased, or exchanged in whole or in part within **90** days of the Ending Date, AND
164         b. The Property was presented to buyer/tenant, or buyer/tenant negotiated to buy or lease the Property, during the term of this
165          Contract. Owner will not owe Broker's Fee under the provisions of this paragraph 10(A) if, after the expiration of this Contract,
166          Owner has entered into an exclusive right to sell or lease contract for the Property with another broker at the time of the sale.

167 Broker/Licensee Initials: _____      XLSC Page 3 of 8      Owner Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    419 Ross Avenue

Case 1:16-bk-01373-HWV   Doc 117   Filed 02/28/18   Entered 02/28/18 13:41:32   Desc
Main Document   Page 3 of 8

(B) **If Sale or Lease Does Not Occur**
   In the event of any of the following, Broker's Fee will be calculated on the listed price of the Property. Owner will pay Broker's Fee when:
   1. **A ready, willing, and able buyer, or in the case of a lease or other tenancy, a ready, willing, and able tenant, is found by Broker or by anyone, including Owner.** A willing buyer is one who will buy the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner. A willing tenant is one who will lease the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner.
   2. The Property, or any part of it, is taken by any government for public use (Eminent Domain) which makes the Property unmarketable in its total state as offered in this Contract.
   3. The Property, or an interest in it, is voluntarily or involuntarily donated or transferred.
   4. Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed, or transferred to another person or entity that, as of the date of this Contract, does not have any ownership interest in Owner.
   5. Owner withdraws the Property from the market; acts as if the Property is not on the market; breaches, terminates or cancels this Contract; causes or allows the Property to be made unmarketable or to be reduced in value; or fails to do the things required of Owner in the Agreement of Sale or Lease.
(C) **In Case of Buyer/Tenant Default**
   If a buyer/tenant enters into an Agreement of Sale or Lease, then refuses to buy or rent the Property, or if the buyer/tenant is unable to buy or rent because of failing to do the things required of the buyer/tenant in the Agreement of Sale or Lease, Owner will pay Broker:
   1. **10%** of/from monies paid by buyer/tenant on account of the transaction, including, but not limited to, extension fees, option payments, liquidated damages, judgments, etc, OR
   2. Broker's Fee, whichever is less.
(D) **Successors and Assigns**
   If a buyer/tenant under a lease for which a Broker's Fee is payable under this Contract, its successors or assigns, or any agent, officer, employee or shareholder of a buyer/tenant purchases the Property, whether strictly in accordance with the terms of any option, right of first refusal, similar right or otherwise during the term of the lease, any extension thereof, or within __90__ days after the expiration thereof, then Owner will pay the Broker's Fee in Paragraph 8(B).

## 11. BROKER'S FEE IF TENANT BUYS PROPERTY
The Broker's fee if a tenant procured by Broker buys the Property is **as agreed in Item #6** of/from the sale price and paid by Owner at settlement.

## 12. BROKER NOT RESPONSIBLE FOR DAMAGES
Owner agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

## 13. BROKER INDEMNIFICATION
Owner hereby agrees that if any claims for brokerage commissions or fees are ever made against Owner and/or Broker in connection with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Owner will indemnify and hold harmless Broker from and against the non-performance of this Agreement by Owner or by a buyer/tenant, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

## 14. CONFIDENTIALITY
Owner understands that a buyer/tenant or buyer/tenant's representatives might not treat the existence, terms or conditions of any offer as confidential unless there is a confidentiality agreement between Owner and buyer/tenant.

## 15. DEPOSIT MONEY
(A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted an offer.
(B) Broker, if named in a lease, will keep all deposit monies paid by or for the tenant in an escrow account until the tenancy ends, the lease is terminated, or the terms of a prior written agreement between the tenant and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Tenant and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted the lease.
(C) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

Broker/Licensee Initials: _____  XLSC Page 4 of 8  Owner Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   419 Ross Avenue

1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(D) Owner agrees that if Owner names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Owner.

## 16. BROKER'S SERVICE TO OTHER PARTIES

Broker may provide services to a buyer/tenant for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

## 17. OTHER PROPERTIES

Owner agrees that Broker may list other properties for sale or rent and that Broker may show and sell other properties to prospective buyers/tenants.

## 18. ADDITIONAL OFFERS

Unless prohibited by Owner, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE OWNER ENTERS INTO AN AGREEMENT OF SALE OR LEASE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 19. PROPERTY INFORMATION

Owner is hereby advised of Owner's duty to disclose known material defects and conditions about the Property. If the Property contains not less than one and not more than four residential dwelling units Owner may be required by the Real Estate Seller Disclosure Law (68 C.S. §7301 et seq.) to disclose these defects and conditions on a separate disclosure statement.

(A) Within 5 days of the Starting Date of this Contract, Owner will ( ☐ will not) deliver a completed Property Information Sheet to Broker.

(B) Owner represents and warrants that there are no known material defects or environmental hazards affecting the Property including, but not limited to, contamination by radon gas, asbestos, polychlorinated biphenyls, underground storage tanks, or petroleum products, except as noted on a separate disclosure statement or as follows: _____

(C) Owner hereby agrees to indemnify, defend (with counsel reasonably acceptable to Broker), and hold Broker harmless against claims, actions, suits, liabilities, costs, and expenses arising out of Owner's failure to disclose known material defects and conditions, including judgments, costs of defense, attorneys' fees, and settlement. This clause will survive the Contract.

## 20. OWNER REPRESENTATIONS

Owner represents and warrants that:

(A) Owner, or each person signing this Contract on behalf of Owner, has the full right, power and authority to execute this Contract as or on behalf of Owner;

(B) Owner owns the Property and/or has the full right, power, and authority to complete the sale or lease as provided in this Contract;

(C) Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate, or conservatorship proceeding;

(D) Owner has no notice or knowledge that any tenant or sub-tenant of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;

(E) There are no effective, valid, or enforceable option rights, rights of first refusal, rights of first offer, or any other restrictions, impediments, or limitations on Owner's right, ability, and capacity to complete a sale or lease of the Property, except as disclosed in writing as required in Paragraph 7(D).

(F) If the transaction is a sale, Owner is legally able to sell the Property with a fee simple title, free and clear, except as follows (additional mortgage, equity loans, debts, liens, judgments, or taxes in arrears, municipal notices or assessments received, mineral rights agreements, etc. _____

(G) This Property is not subject to preferential tax treatment unless otherwise indicated here: _____

**If this Property is subject to preferential tax treatment, Owner should seek advice from legal and financial experts.**

Broker/Licensee Initials: _____ XLSC Page 5 of 8 Owner Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 419 Ross Avenue

21. **RECOVERY FUND** Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658, or (800) 822-2113 (within Pennsylvania), and (717) 783-4854 (outside Pennsylvania).

22. **NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**
Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

23. **TRANSFER OF THIS CONTRACT**
    (A) Owner agrees that Broker may transfer this Contract to another broker when:
    1. Broker stops doing business, OR
    2. Broker forms a new real estate business, OR
    3. Broker joins his business with another.
    (B) Broker will notify Owner immediately in writing if Broker transfers this Contract to another broker. Owner will follow all requirements of this Contract with the new broker.

24. **ALTERNATIVE TRANSACTION** If the sale or lease of the Property changes to any other transaction, including but not limited to sale, lease, exchange, option to buy, right of first refusal, ground lease, sublease or assignment of lease, or expansion or relocation of Tenant in any other property of Owner, then Broker will be Owner's sole and exclusive Agent for the transaction and will represent Owner under the terms and conditions of this Contract.

25. **CONFLICT OF INTEREST**
It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Owner's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Owner in writing in a timely manner.

26. **ENTIRE CONTRACT**
This Contract is the entire agreement between Broker and Owner. Any verbal or written agreements that were made before are not a part of this Contract.

27. **CHANGES TO THIS CONTRACT**
All changes to this Contract must be in writing and signed by Broker and Owner.

28. **MARKETING OF PROPERTY**
    (A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____
    _____
    1. ☐ Owner does not want the listed Property to be displayed on the Internet.
    ☐ Owner does not want the address of the listed Property to be displayed on the Internet.
    2. Owner understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.
    (B) Owner understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.
    (C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Owners have the right to control some elements of how their property is displayed on a VOW and/or IDX website(s). Owner elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
    ☐ Comments or reviews about Owner's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Owner's listing.
    ☐ Automated estimates of the marketing value of Owner's listing, or a hyperlink to such estimates, in immediate conjunction with Owner's listing.
    (D) Marketing Services
    ☐ Broker will not use a Multiple Listing Service (MLS), Commercial Information Exchange (CIE) or other distribution methods to advertise the Property to other real estate brokers and salespersons.
    ☐ Broker will use the following to advertise the Property to other real estate brokers and salespersons (check all that apply):
    ☐ MLS
    ☐ CIE
    ☒ Other distribution methods
    (E) Owner agrees that Broker and Licensee, and the MLS, CIE or other distribution methods are not responsible for mistakes in advertising of the Property.
    (F) Other _____

Broker/Licensee Initials: _____    XLSC Page 6 of 8    Owner Initials: *Trustee*

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    419 Ross Avenue

343 **29. PUBLICATION OF SALE PRICE**
344     Owner is aware that the MLS, CIE, newspapers, websites, and other media may publish the final sale price of the Property.
345 **30. TAXES & ASSESSMENTS**
346     (A) At settlement, Owner will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____
347 _____
348     (B) Yearly Property Taxes $ __3,827.68__      Property Assessed Value $ __177,830.00__
349     (C) Is the property preferentially assessed (including a tax abatement)?    ☐ Yes    ☒ No
350          If applicable, how many years remain? _____
351     (D) Municipality Assessments $ _____
352 **31. TITLE & POSSESSION**
353     (A) Owner will give possession of Property to a buyer at settlement, or on _____
354     (B) At settlement, Owner will transfer full rights of ownership (fee simple) to a buyer except as follows:
355          ☐ Oil    ☐ Gas    ☐ Mineral    ☐ Coal    ☐ Other
356          If checked, please explain: _____
357 _____
358     (C) Owner has, as of the date of this Agreement:
359          ☐ First mortgage with _____ Amount of balance $ _____
360            Address _____
361            Phone _____ Acct. # _____
362          ☐ Second mortgage with _____ Amount of balance $ _____
363            Address _____
364            Phone _____ Acct. # _____
365          ☐ Line of credit with _____ Amount of balance $ _____
366            Address _____
367            Phone _____ Acct. # _____
368          ☐ Owner authorizes Broker to receive mortgage payoff and/or line of credit payoff information from lender(s).
369     (D) Owner has, as of the date of this Agreement:
370          ☐ Judgments $ _____      ☐ Past Due Municipal Assessment $ _____
371          ☐ Past Due Property Taxes $ _____      ☐ Federal Tax Liens $ _____
372          ☐ State Tax Liens $ _____      ☐ Other: _____
373     (E) Owner immediately will notify Broker in the event any of the above information sufficiently changes to render it materially inac-
374          curate. This includes, but is not limited to, the satisfaction of a mortgage, a change in account number, the refinance of a mortgage,
375          and the entry of a new tax lien.
376 **32. BUYER FINANCING** Owner will accept the following arrangements for buyer to pay for the Property:
377      ☒ Cash    ☒ Conventional mortgage    ☐ Other _____
378 **33. BANKRUPTCY** Owner will notify Broker immediately in the event the Property comes under the jurisdiction of a bankruptcy court.
379      If Owner is the subject of bankruptcy, Owner will take all steps necessary to obtain court approval of Broker's appointment to sell or
380      lease the Property, unless Broker elects to terminate this Contract upon notice of the bankruptcy.
381 **34. COPYRIGHT**
382      In consideration of Broker's efforts to market Owner's Property as stated in this Contract, Owner grants Broker a non-exclusive, world-
383      wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and pro-
384      vided by Owner to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video
385      recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Owner's Property. This License
386      permits Broker to submit the Materials to one or more Multiple Listing Services, Commercial Information Exchanges or other distri-
387      bution methods, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce,
388      publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract.
389      The License may not be revoked by Owner and shall survive the ending of this Contract. Owner also grants Broker the right to sub-
390      license to others any of these rights granted to Broker by Owner. Owner represents and warrants to Broker that the License granted to
391      Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Owner under-
392      stands that the terms of the License do not grant Owner any legal right to any works that Broker may produce using the Materials.
393 **35. NOTICE BEFORE SIGNING**
394      When signing by both parties, this is a legal contract. Owner acknowledges that Broker has advised Owner to consult and retain experts
395      to advise and represent Owner concerning the legal and tax effects of this Contract and the completion of the sale, lease, or alternative
396      transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equip-
397      ment, soil, tenancies, title and environmental aspects. Broker will have no obligation to investigate any such matters unless expressly
398      agreed to in writing by Broker and Owner. Owner further acknowledges that in determining the financial soundness of any prospec-
399      tive buyer, tenant, or security offered, Owner will rely solely on Owner's own investigation, regardless of Broker's assistance in gath-
400      ering information.
401 Broker/Licensee Initials: _____      XLSC Page 7 of 8      Owner Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    419 Ross Avenue

## 36. SPECIAL CLAUSES

(A) The following are part of this Listing Contract if checked:
- [ ] Commercial Property Information Sheet (PAR Form CPI)
- [ ] Consumer Services Fee Addendum (PAR Form CSF)
- [ ] Vacant Land Addendum to Listing Contract (PAR Form VLA)
- [ ] Short Sale Addendum (PAR Form SSL)
- [X] Sellers Property Disclosure
- [ ] _____

(B) Additional Terms:

___/___ Owner has read the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

___/___ Owner has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.

___/___ Owner has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.

Owner has read the entire Contract before signing. Owner must sign this Contract.

Owner gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed. Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties. This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF OWNER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

OWNER _Lawrence V. Young, Trustee in Bankruptcy for_ DATE 2/21/2018
       Lawrence Young, Trustee for

OWNER _Michael Stock_ DATE _____
       Michael & Linda Stock

OWNER _Linda Stock_ DATE _____

BROKER (Company Name) Campbell Commercial Real Estate, Inc.

AUTHORIZED PERSON _____ DATE 2/21/18

XLSC Page 8 of 8
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          419 Ross Avenue

Case 1:16-bk-01373-HWV   Doc 117   Filed 02/28/18   Entered 02/28/18 13:41:32   Desc
Main Document   Page 8 of 8